UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JAY BONANZA BRILEY, | : | |
| | : | Civ. Action No. 17-12127(RMB) |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MR. ORTIZ, Warden, | : | |
| FCI Fort Dix, | : | |
| | : | |
| Respondent | : | |

**BUMB**, District Judge

On November 28, 2017, Petitioner, Jay Bonanza Briley, incarcerated in FCI Fort Dix, in Fort Dix, New Jersey, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking 12-months RRC placement. (Pet., ECF No. 1, ¶16.) Petitioner subsequently filed (1) a motion to appoint pro bono counsel (ECF No. 2); (2) a motion for leave to file discovery documents (ECF No. 4); (3) a motion for leave to file a summary judgment motion (ECF No. 6); and (4) a motion to appoint counsel and amend the habeas petition (ECF No. 7). Respondent filed an Answer (ECF No. 5) to the petition, and Petitioner filed a reply. (ECF No. 9.)

For the reasons discussed below, the Court grants Petitioner's motion to file discovery documents, denies the

remainder of Petitioner's pending motions, and denies the habeas petition.

I. BACKGROUND

Petitioner alleges the following facts in support of his petition for habeas relief. In October 2013, Petitioner was sentenced to serve a 6 ½ year term of imprisonment. (Pet., ECF No. 1, ¶3.) In September 2017, Petitioner asked his Case Manager for fourteen-months placement in a Residential Reentry Center ("RRC") and/or Home Confinement ("HC"), pursuant to 18 U.S.C. §§ 3621, 3624. (Id., ¶4.) On November 16, 2017, Case Manager Olsen informed Petitioner that his Unit Team recommended that he receive eight months in an RRC/HC, based on his "excellent financial and family support." (Id., ¶5.)

Petitioner alleges the Bureau of Prisons ("BOP") and his Unit Team ignored his Case File and his forensic psychological evaluation report in his criminal case, which support a 12-month RRC placement. (Id., ¶6.) Dr. Blumberg, who evaluated Petitioner with respect to his conviction and sentence, recommended that Petitioner participate in a two-year psychotherapy program, which is available to him through his veteran's medical coverage. (Id., ¶¶8, 9.) Petitioner's release date is December 2018. (Id., ¶15.)

Respondent opposes relief for two reasons: (1) Petitioner failed to fully exhaust his administrative remedies; and (2) the

BOP made an individualized RRC placement decision in compliance with the governing statutes. (Answer, ECF No. 5 at 16, 20.)

In reply, Petitioner asserts that he would have been granted a longer RRC Placement if the BOP had provided him mental health services pursuant to 18 U.S.C. 3553(2)(D).[1] (Petr's Reply, ECF No. 9, ¶¶3-11.) Case Manager Olsen discarded Petitioner's medical documents until Petitioner produced them in his program review in May 2017. (Id., ¶12.)

Petitioner earned 750 programming hours of skills classes, and he never received a disciplinary shot, which qualified Petitioner for 12-months RRC Placement, but Case Manager Olsen never requested this incentive for Plaintiff. (Id., ¶13.) Petitioner contends his need for medical treatment should have outweighed the factors that he had excellent financial and family support. (Id., ¶15.)

---

[1] 18 U.S.C. 3553(a)(2)(D) provides:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider … (2) the need for the sentence imposed … (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3

On April 30, 2018, Petitioner was informed that the Residential Reentry Manager ("RRM") had given him an RRC placement date of October 10, 2018, only 81 days of RRC placement. (Id., ¶23.) Petitioner asserts that if bed space is not available in an RRC until October 2018, he should be placed in home confinement on June 30, 2018, so he receives six-months reentry time. (Id., ¶24.)[2] In his motions to appoint counsel, Petitioner also seeks to be excused from exhausting administrative remedies because if he were required to exhaust it would be too late to receive 12-months RRC placement because his release date is in December 2018. (Mot. to Appoint Counsel, ECF Nos. 2, 7.)

II. PENDING MOTIONS

    A.    <u>Motions for Appointment of Counsel</u>

Petitioner seeks appointment of counsel in this matter because he cannot afford counsel; the issues are complex; he has a limited knowledge of the law; and he has a limited ability to investigate due to incarceration. (Mot. to Appoint Counsel, ECF Nos. 2, 7.) Pursuant to 18 U.S.C. § 3006A(a)(2)(b) "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided

---

[2] Petitioner does not allege that he requested reconsideration for Home Confinement after learning his RRC Placement is not available until October 2018. This Court does not have authority to make a home confinement determination. See 18 U.S.C. § 3624(c).

4

for any financially eligible person who-- … (B) is seeking relief under section 2241…"

In determining whether the interests of justice require appointment of counsel:

> the district court must first decide if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims. Courts have held, for example, that there was no abuse of a district court's discretion in failing to appoint counsel when no evidentiary hearing was required and the issues in the case had been narrowed, or the issues were "straightforward and capable of resolution on the record," or the petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions."

<u>Reese v. Fulcomer</u>, 946 F.2d 247, 263-64 (3d Cir. 1991), <u>cert. denied</u>, 503 U.S. 988 (1992), <u>superseded on other grounds by statute</u>, 28 U.S.C. § 2254(d) (internal quotations omitted).

Petitioner's claim is not frivolous. Appointment of counsel will not benefit Petitioner or the court because Petitioner has adequately laid out the factual and legal bases for his claims, and no further investigation is required. The petition can be decided on the record before the Court, and the issues are straightforward. Therefore, the Court denies Petitioner's motions for appointment of counsel.

B.  Motion(s) to Amend Petition

Within his motions for appointment of counsel, Petitioner seeks to amend the petition to add four statements:

> (1) The Warden and the Ft. Dix Correctional Staff erred in their decision to "downgrade" my mental health diagnosis with no medical diagnosis from another mental medical health professional or any clinical findings to substantiate their recommendations and decisions to reduce my time in RRC placement to receive my psychotherapy, affirmed by exhibit 3;
>
> (2) Page one of exhibit 3, the Warden affirms that Unit Team used Dr. Blumberg's medical letter, exhibit 1, to make their decision to downgrade my medical treatment time frame;
>
> (3) Page two of exhibit 3 the Warden err[ed] in stating 150-180 days RRC Placement would be sufficient to provide the greatest likelihood of successful reintegration into the community, which is a contradiction to Dr. Blumberg's recommendations stated in exhibit 1, and 2; and
>
> (4) The Warden and the Ft. Dix Correctional Staff decisions and recommendations to downgrade my mental health diagnosis is "deliberate indifference", and "negligence" intentually [sic] interfering by denying me adequate mental health treatment time during my RRC Placement. Page v. Norvell, 186 F Supp. 2d (D. Ore 2000).

(Mot. to Appoint Counsel, ECF No. 7, ¶¶9-12.)

In the interest of providing Petitioner the speedy resolution of his petition that he requests (Emergency Urgent Request for Decision, ECF No. 10), the Court denies Petitioner's motion to amend the petition, which would require the Court to order

6

Respondent to file a new Answer. The Court will, however, consider these four statements by the Petitioner, with the attached exhibits, as part of his reply to the Answer.

With respect to Petitioner's claim of negligence and deliberate indifference by denying him adequate mental health treatment during RRC Placement, the Court notes that if Petitioner is seeking to bring a claim under the Federal Tort Claims Act ("FTCA") or a <u>Bivens</u> claim, he must do so in a new civil action, subject to the requirements of the Prison Litigation Act, 42 U.S.C. § 1997e and the FTCA, 28 U.S.C. § 2675 *et seq.*

    C.   <u>Motion to File Discovery Documents</u>

Habeas petitions under § 2241 are generally decided based on the petition, the answer, the reply (if any) and any exhibits attached to those pleadings. Petitioner seeks to submit materials in support of his petition under what he perceives as a duty to disclose pursuant to Federal Rule of Civil Procedure 56, summary judgment motions. A summary judgment motion is not required to seek habeas relief. The Court will, however, consider the exhibits Petitioner submitted with his motion to file discovery documents as exhibits to his habeas petition. Therefore, the motion is granted.

II. DISCUSSION

    A.   <u>Exhaustion of Administrative Remedies</u>

Federal inmates are required to exhaust administrative remedies before seeking habeas relief under 28 U.S.C. § 2241. Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012). The BOP has a four-step administrative remedy program: (1) attempt informal resolution with prison staff; (2) submit an administrative remedy request to the warden; (3) appeal to the appropriate Regional Director; and (4) appeal to the General Counsel in the BOP Central Office. 28 C.F.R. §§ 542-10 through 542.15.

Petitioner completed only the first two steps before filing his habeas petition. (Moran Decl., ¶4, ECF No. 5-3; Ex. 2, ECF No. 3-4 at 10-13.) He seeks to be excused from the exhaustion requirement because he is less than one year from his release date. Therefore, he could not obtain the relief he seeks, 12 months RRC placement, if he first exhausts his administrative remedies.

Exhaustion of administrative remedies is not required if it would not promote the goals of exhaustion. See e.g. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (finding exhaustion futile because Petitioner could not have complained when he was deprived of pertinent information). The goals of the exhaustion doctrine include:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct

> their own errors fosters administrative autonomy.

Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).

According to the Declaration of Tara Moran, Petitioner attempted to exhaust his administrative remedies after filing this petition. (Moran Decl., ¶¶5-7, ECF No. 5-3.) He did not complete the final step because his submission was rejected on April 11, 2018, because he failed to submit a complete set of his appeal, and he was given fifteen days to resubmit. (Id., ¶7.)

It is now six-months from Petitioner's release date, and he has attempted but not completed the final step of the administrative remedy process. Requiring exhaustion prior to review by the Court could subject Petitioner to irreparable injury in loss of reentry services. See Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (describing exceptions to the exhaustion requirement). Therefore, the Court will excuse Petitioner's failure to exhaust.

    B.   The Merits of the Petition

       1.   Legal Standard

28 U.S.C. § 2241(a), (c) provide that a writ of habeas corpus may be granted to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." The Second Chance Act, 18 U.S.C. § 3624(c), provides:

> (c) Prerelease custody.--
>
> (1) In general. --The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

"The Second Chance Act of 2007 . . . requires the Bureau of Prisons to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community." Wilson v. Strada, 474 F. App'x 46, 46-47 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)). 28 C.F.R. § 570.22 provides:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

The factors that must be considered under 28 U.S.C. § 3621(b) are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the

sentence; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Habeas review over the BOP's RRC placement decision is limited to whether the BOP abused its discretion. Vasquez, 684 F.3d at 434 (citing Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1991). The BOP exercises its authority by applying the five factors under § 3621(b) and a sixth factor of participation and/or completion of Skills Development programs, pursuant to 42 U.S.C. § 17541. Id.

### 2. The RRC Placement Decision

Respondent submitted the Declaration of Frederick Olsen, Petitioner's Case Manager. ("Olsen Decl." ¶2, ECF No. 5-5.) Olsen conducted Petitioner's Program Review on May 25, 2017, and they discussed Petitioner's RRC placement. (Id., ¶5.) Prior to this meeting, Olsen reviewed Petitioner's Central File. (Id.) The Unit Team, of which Olsen was a member, recommended that Petitioner be placed in an RRC for 150 to 180 days. (Id., ¶6.)

In making this determination, the Unit Team considered: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement of the court that imposed the sentence; (5) any pertinent policy statement issued by the U.S. Sentencing Commission; (6) whether the inmate completed (a) Inmate Skills Development programming, (b) a Drug Abuse Treatment Program; and (7) whether home confinement was appropriate; (8)

Petitioner's need for services; (9) public safety; and (10) the necessity of the BOP to manage its inmate population. (Olsen Decl., ¶6, ECF No. 5-5.)

The Unit Team wrote the following in the "Comments" section of their RRC recommendation:

> In accordance with the 2nd Chance Act of 2007, the Unit Team has considered inmate Briley's need for services, as well as public safety and the necessity of the Bureau to manage its inmate population. Inmate Briley is a 57-year old male convicted in the Eastern District of Virginia and sentenced to a 78 month sentence for Assaulting, Obstructing and Impeding a Federal Officer; [2 counts of] Obstructing and Impeding a Federal Officer; and Disorderly Conduct – Obscene Acts. He needs to secure employment upon release. He has work expertise as a contractor for cyber security and construction company. During this period of incarceration, he has institutional work experience in the following area of general maintenance and is currently on the waiting list for programs in the Inmate Skills Development System. Inmate Briley's Inmate Skills Development was reviewed, and both the Health Services and Psychology Departments recommend Inmate Briley for RRC Placement. Prior to his incarceration, he lived in Fairfax, Virginia. Inmate Briley is considered a moderate risk inmate due to strong family support, stable residence, willingness to program, and a long term of imprisonment imposed. Based on the aforementioned factors and pre-release needs, Unit Team is recommending a RRC placement range of 150-180 days. This recommendation will assist inmate Briley in making a successful transition back to the community.

(Olsen Decl., ¶6, ECF No. 5-5.)

Petitioner requested reconsideration because he received paperwork confirming him for acceptance into a Veteran's Affairs psychology treatment program that required a longer participation time. (Id., ¶7.) Olsen spoke with a VA representative and learned the program was not an "early release" program, but it would commence upon "proper release" from custody and continue for 7-8 months. (Id.) Upon reconsideration, on November 3, 2017, the Unit Team recommended a 210 to 240-day period of RRC placement. (Id., ¶9.)

In the "Comments" section of the recommendation, the Unit Team wrote:

> Inmate Briley is a 57 year old make who was sentence[d] to 78 months [for assaulting, obstructing and impeding a federal officer and obscene acts.] Inmate Briley was diagnosed by a forensic psychiatrist with Depressive Disorder [NOS], Personality Disorder {NOS] with Impulsive, Histrionic and Narcissistic Features. The doctor recommended a long term psychotherapy course. Regarding release planning, inmate Briley plans on residing with his wife. His ISDS plan is complete. He has not received any disciplinary infractions during his incarceration. Inmate Briley is considered a High Risk inmate, based on his lengthy incarceration and psychiatric condition. Inmate Briley will need resources of the RRC as well as family support to become a successful member of the community. The Unit Team is requesting a 210-240 days (7-8 months) placement which is beyond the normal 180 day range. He does have family ties in the area. He currently has a commissary balance of approximately $12.32 with a six month average of $1,019.50. Inmate Briley has taken advantage of some of the programming

13

> opportunities available to him …. He has been advised by his Unit Team to contact the Psychology Department at FCI Fort Dix to complete a program in cognitive/behavioral program to aid with his transition back into society. The placement referral also provides the greatest chance for lack of recidivism and provides inmate Briley with an opportunity to establish community support system. The RRM's Office was contact[ed] regarding the duration of placement as to whether they could accommodate the request. They stated they have accommodated placements of over 180 days and would try to accommodate us with this request or at least provide the maximum amount of time available.

(Id.)

When this recommendation was forwarded to the Case Management Coordinator's ("CMC") Office for review, the CMC determined Petitioner did not need such a lengthy placement because he had outside money and family support, and he could receive psychotherapy during a 180-day RRC placement and while on supervised release. (Olsen Decl., ¶8.) The Associate Warden agreed with the CMC. (Id.) After reconsideration, on November 28, 2017, the Unit Team recommended 150-180 days RRC placement for Petitioner. (Id., ¶9.) An RRC packet was completed and forwarded to the Community Corrections Management ("CCM") Office to find an RRC in the Fairfax, Virginia area. (Id., ¶10.) At the time of the Answer, Petitioner did not have an RRC date. (Id.)

Subsequently, Petitioner informed the Court he received an RRC placement date of October 10, 2018, only 81 days, apparently

due to lack of bed space. (Petr's Reply, ECF No. 9, ¶¶23, 24.) Case Manager Olsen told Petitioner there was nothing Unit Team could do to provide more RRC time. (Id., ¶40.) Petitioner notes his approved RRC consideration form indicates he is appropriate for home confinement, with a start date on June 30, 2018. (Id., 41.)

Petitioner asserts the BOP failed to consider his forensic psychological evaluation report from his criminal case, where Dr. Blumberg recommended that for successful reentry, Petitioner should engage in a two-year out-patient psychotherapy program. (Pet., ECF No. 1, ¶¶3-11.) Therefore, Petitioner concluded he should receive a 12-month RRC placement. (Id., ¶16.)

Petitioner also complains that after his Unit Team recommended an 8-month RRC placement, the BOP downgraded his RRC placement due to his financial and family support, without obtaining a medical professional's opinion. (Mot. for Leave to File Summ. J., ECF No. 6.; Mot. to Appoint Counsel, ECF No. 7.) In his reply, Petitioner asserts that if the BOP had provided him with the mental health treatment he required during his incarceration (which he contends they did not), he would have been granted 12-month RRC placement. (Petr's Reply, ECF No. 9.) Petitioner further contends the CMC cannot override Dr. Blumberg's opinion that Petitioner required a long-term psychotherapy program

15

for successful reentry because she is not a medical professional. (Petr's Reply, ECF No. 9.)

3. <u>Analysis</u>

In his May 2013 evaluation of Petitioner, Dr. Blumberg opined:

> making psychiatric treatment a condition of probation is reasonable and appropriate. I am aware of the mental health services that are available in the Bureau of Prisons. The type of intensive individual psychotherapy that is indicated in Mr. Briley's case is not available in the Bureau of Prisons but is available on an outpatient basis through his health maintenance organization.

(Mot. for Leave to File Discovery Documents, ECF No. 4; Ex. 2.) Petitioner received a follow-up opinion from Dr. Blumberg on October 16, 2017, wherein he opined that Petitioner could benefit from long-term weekly intensive psychotherapy that he could receive from any VA hospital upon his release. (<u>Id.</u>) Dr. Blumberg also wrote a clarification in November 2017, indicating that treatment should begin as soon as Petitioner entered a halfway/house. (<u>Id.</u>)

Dr. Blumberg's opinion was considered in making the determination that Petitioner required only a 150 to 180-day period of RRC placement. Dr. Blumberg's opinion is not a mandate for a specific amount of time in RRC placement. The CMC and Associate Warden agreed Petitioner could receive mental health treatment during a 150 to 180-day RRC placement and continue his treatment

while on supervised release. The BOP provided an individualized consideration of the relevant factors in making Petitioner's RRC placement decision. The Court can review the BOP's decision only for abuse of discretion. Based upon a review of the record, this Court finds that the BOP did not abuse its discretion. Therefore, the habeas petition is denied.

III. CONCLUSION

For the reasons discussed above, the Court denies the petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

Date: June 29, 2018

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**